## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

MELISSA GIBBS,

     *Plaintiff,*

*v.*                            CASE NO. 12-CV-14643

COMMISSIONER OF              DISTRICT JUDGE GERSHWIN A. DRAIN
SOCIAL SECURITY,           MAGISTRATE JUDGE CHARLES E. BINDER

     *Defendant.*
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence does not support the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **GRANTED**, that Defendant's Motion for Summary Judgment be **DENIED**, and that the case be **REMANDED FOR AN AWARD OF BENEFITS**.

### II.    REPORT

#### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for a period of disability, Disability Insurance Benefits ("DIB"), and for Supplemental Security Income ("SSI") benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 10, 15.)

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Plaintiff was 29 years of age at the time of the most recent administrative hearing. (Tr. at 44.) Plaintiff's employment history includes work as a gas station attendant for 6 months, a retail merchandiser for one year, and a mental health facility patient care worker for 6 years. (Tr. at 205.) Plaintiff filed the instant claims on February 16, 2008 and August 18, 2008, alleging that she became unable to work on May 31, 2006. (Tr. at 141-47, 148-50.) The claims were denied at the initial administrative stage. (Tr. at 70, 71.) In denying Plaintiff's claims, the Commissioner considered affective disorders and disorders of the back, discogenic and degenerative, as possible bases for disability. (*Id.*) On July 19, 2010, Plaintiff appeared before Administrative Law Judge ("ALJ") Karen Sayor, who considered the application for benefits *de novo*. (Tr. at 15-37, 38-69.) In a decision dated September 29, 2010, the ALJ found that Plaintiff was not disabled. (Tr. at 33.) Plaintiff requested a review of this decision on November 22, 2010. (Tr. at 13-14.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on August 28, 2012, when, after review of additional exhibits,[2] (Tr. at 409-17, 483-86,) the Appeals Council denied Plaintiff's request for review. (Tr. at 1-5.) On October 19, 2012, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

## B.     Standard of Review

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137,

---

[2]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a

different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

**C.      Governing Law**

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits ("DIB") program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income ("SSI") program of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who

4

become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth

step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.    ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through December 31, 2011, and that Plaintiff had not engaged in substantial gainful activity since May 31, 2006, the alleged onset date. (Tr. at 20.) At step two, the ALJ found that Plaintiff's fibromyalgia, degenerative disc disease, lumbar spine, obesity, depression, and anxiety were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 21-22.) At step four, the ALJ found that Plaintiff could not perform any of her past relevant work. (Tr. at 31.) The ALJ also found that Plaintiff was 25 years old on the alleged disability onset date and, thus, a younger individual (between the ages of 18 and 49). (*Id.*) At step five, the ALJ found that Plaintiff could perform a limited range of light work. (Tr. at 22-31.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 33.)

### E.    Administrative Record

### 1.    Physical Impairments

The evidence of record reveals that Plaintiff was treated at the Caro Community Hospital from 2006 to 2008, for pain in her left shoulder and arthralgia and fatigue. (Tr. at 289-303.)  On September 28, 2006, x-rays of Plaintiff's lumbar spine were normal and x-rays of her left knee were also normal. (Tr. at 303.)

Plaintiff was also treated b y Naveed Mahfooz, M.D. in 2008. (Tr. at 304-17.)  An MRI of Plaintiff's lumbar spine taken on February 18, 2008 showed "[c]hanges of disc dessication at L4-5 with mild broad-based disc bulge resulting in minimal encroachment on the inferior aspect of the

left sided neural foramina at L4-5.  There is no focal disc herniation, significant spinal stenosis anywhere in the lumbar spine. (Tr. at 312.)

Plaintiff underwent trigger-point injections to the lumbar spine in April of 2008 with Naveed Mahfooz, M.D., at the Pain Management Center at Bay Regional Medical Center. (Tr. at 419-22.)

Plaintiff was examined, at the request of DDS, by Bret Bielawski, D.O. on June 11, 2008. (Tr. at 383-85.)  Dr. Bielawski concluded that Plaintiff "was very tender in the lumbar spine and there is lack of lumbar lordosis.  She had a normal gait [and did] not require the use of an assistive device.  She was ataxic with tandem gait and was off balance when walking heel and toe with moderate difficulty squatting." (Tr. at 385.)

A Physical RFC Assessment was completed on July 1, 2008, by Leonard Sheridan.  (Tr. at 386-93.)  The assessment concluded that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk for 6 hours in an 8-hour workday, sit for 6 hours in an 8-hour workday, and was unlimited in the ability to push and pull. (Tr. at 387.)  The assessment found that Plaintiff was limited occasionally in all postural areas except that she should never climb ladders, ropes or scaffolds. (Tr. at 388.)  There were no manipulative, visual, communicative, or environmental limitations established. (Tr. at 389-90.)

On December 23, 2008, x-rays of the lumbosacral spine were "[u]nremarkable." (Tr. at 424.)  On June 9, 2009, Plaintiff was examined by a doctor at Michigan Medicine, P.C., and she was diagnosed with fibromyalgia. (Tr. at 402.)

On October 13, 2009, an MRI of Plaintiff's lumbar spine showed "[m]ild degenerative changes greatest at L5-S1[,]" a "small disc herniation centrally/eccentric to the left at L5-S1" which "lead to mild to moderate left neural foramen narrowing at L5-S1 effacing the exiting left L5 nerve root" and "mild right neural foramen narrowing" but "no significant spinal stenosis." (Tr. at 423.)

Plaintiff continued to be treated, with prescription medication, for fibromyalgia through 2010. (Tr. at 441-82.)

## 2.  Psychological Impairments

Plaintiff sought treatment at Tuscola Behavioral Health Services from 2007 to 2008. (Tr. at 318-26.)  The Initial Psychiatric Evaluation of March 30, 2007, indicated that Plaintiff

> has problems in mobility associated with presumed fibromyalgia interfering with her work resulting in conflicts on the job.  In addition there has been stress associated with a romantic relationship of 2 years duration with a 40 year old married man who owns his own business, has children, and has been unable to get a divorce so he could marry Melissa.  Another stressor is that she is on probation having been arrested in the fall of last year for possession of cocaine paraphernalia.  She says she has not used this for over one year.

(Tr. at 320.)  Plaintiff had never "had counseling or psychotropic medications until this current situation." (Tr. at 320-21.)  It was noted that Plaintiff's

> Verbal responses are relevant and coherent without evidence of disturbance of association, psycho motor retardation, flight of ideas or pressure speech.  Her mood is depressed.  Affect is appropriate and reactive with adequate prosody.  She is tearful at times.  She denies suicidal ideation or homicidal ideation....Concentration is impaired and some racing thoughts.  No manic episodes.  Passive suicidal ideation only with no intent.  No blackouts.  Some panic attacks.  Anxiety generalized.  No clear cut phobias.  No paranoid ideation.  No hallucinations.  No obsessive compulsive symptoms....Cognition is intact including memory, attention and comprehension.  She is oriented  in 3 spheres...She seems of above average intelligence.

(Tr. at 321.)  Plaintiff was diagnosed with Major Depressive Disorder, assessed a GAF score of 58, and was given a good prognosis. (*Id.*)

Plaintiff was evaluated on March 25, 2008, at the request of Disability Determination Services ("DDS"), by Edward Tava, Ed.D, Licensed Psychologist. (Tr. at 328-32.)  Dr. Tava noted that Plaintiff "states that she is well able to drive, although she can do so only for a relatively short period of time.  Nevertheless, this client was able to drive to this appointment, driving approximately 45 minutes." (Tr. at 329-30.)  Dr. Tava found that Plaintiff "exhibits appropriate contact with reality...Her overall motor activities seem somewhat lethargic...seems rather dependent on people...her motivation for change seems somewhat marginal.  Her self-insight appears to be a bit marginal as well." (Tr. at 330.)  Dr. Tava diagnosed Major depression, recurrent, moderate, assessed a GAF score was 52, and a guarded prognosis. (Tr. at 331.)

A Psychiatric Review technique was completed on May 8, 2008, by Bruce G. Douglass, Ph.D.. (Tr. at 336-49.)  Dr. Douglass diagnosed affective disorders, i.e., Major Depressive Disorder. (Tr. at 336, 339.)  Dr. Douglass found Plaintiff was moderately limited in activities of daily living, in maintaining social functioning, and in maintaining concentration, persistence, or pace. (Tr. at 346.)

A Mental Residual Functional Capacity ("RFC") Assessment was completed on May 8, 2008, by Dr. Douglass.  The assessment concluded that Plaintiff is moderately limited in the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to perform activities within a schedule, the ability to work in coordination or proximity with others, but was otherwise not significantly limited in understanding and memory and sustained concentration and persistence. (Tr. at 364-65.)  The assessment also found that Plaintiff was moderately limited in the ability to interact appropriately with the general public but was otherwise not significantly limited in social interaction or adaptation. (Tr. at 365.)  Dr. Douglass concluded that

> Claimant will have trouble with complex tasks in demanding work settings, due to moderate limitations in concentration and pace.  Social functioning is reduced.  Cognition is adequate.  Self care and adaptation are gross WNL [within normal limits].  She retains the capacity to perform simple, routine, 2-step tasks on a sustained basis.

(Tr. at 366.)

On January 27, 2009, Plaintiff was given an Annual Psychiatric Evaluation by Mohammad Jafferany, M.D..(Tr. at 439-40.)  Plaintiff indicated that she did not have any side effects from the medication and that her family doctor was "following her fibromyalgia symptoms." (Tr. at 439.)  It was noted that Plaintiff's "[t]hought process and contents did not show any hallucinations or delusions or paranoia.  No suicidal or homicidal ideations.  Insight and judgment was fair and attention and concentration was fair.  Fund of knowledge was average." (*Id.*)  Dr. Jafferany diagnosed Major Depressive Disorder, single episode, mild, and assessed a GAF score of 50. (Tr. at 439-40.)

Plaintiff continued to be treated for depression and her medications were reviewed through 2010. (Tr. at 428-38.)

### 3.    Administrative hearing

Plaintiff testified at the administrative hearing that she is 29 years old, lives with her mother, is 5'7" and weighs 256 pounds. (Tr. at 44.)  Plaintiff indicated that she can drive a car but not for long distances which she defined as "[m]ore than 15, 20, 30 minutes," because after that, her "leg goes numb, and my back really starts to ache." (*Id.*)  Plaintiff testified that she had attempted to work since the alleged onset date but did not engage in substantial gainful activity.

Plaintiff testified that when she tried work in a manufacturing plant for plastic, she "barely made it through the one day and I was on the floor by the end of the night, and the guys were laughing at me, and I was crying, and I couldn't walk the next day...It just crippled my whole body doing that repetitive motion like that." (Tr. at 45.)  She further testified that when she tried to do pizza delivery work, "a lady called in and said I tried to run over her child, which was very untrue, and that made me very emotional, and I couldn't handle the fact that people were gonna call in and tell me that I'm doing these awful things which I didn't do" so she quit that job. (*Id.*)  She also tried work setting up a Dollar Store and she "was setting up all the shelving and all that and getting it ready for opening, and I made it - - barely made it through the one day, and the second day, again, I had no ability to use my hands, my back was - - gave out.  I couldn't get up out of bed; I had to sue a desk chair to roll to get to the bathroom, that kind of thing." (Tr. at 45-46.)

Plaintiff stated that she stopped working in 2006 because she was not able to fully perform the job, her pain had increased, her "memory was getting bad...I'd forget to, you know, fill out paperwork and what I needed to do...The stress of it was very difficult, and I got to where I could not stand, my back would not hold me up.  Every few minutes, I'd have to lean on a counter so that I wouldn't fall." (Tr. at 46.)  Plaintiff further testified that she cannot work because of the "significant pain from fibromyalgia, and the depression gets so bad where I can't leave the house, I don't - - it takes everything I got in me just to go to an appointment, even if there's just one that month.  It takes everything in me just to go out and be around people.  The anxiety gets real bad.

10

I shake and I sweat, and I cry uncontrollably, as you can tell. I can only stand for maybe five to 10 minutes, given the day.  Some days I can't stand at all.  I do have a walked that I've had to use frequently.  It seems to be getting worse, and the chronic pain gets to the point where you want to commit suicide, which my religion, I know it's wrong, but it gets to the point where that's what I want to do, and I'll get in that way for a few days, and if it wasn't for my family and my boyfriend, I would not be here, I know that." (Tr. at 47-48.)  Plaintiff testified that she has flare ups, where she "feel[s] every joint and every inch of my body, and it aches, and it burns" and when asked how often these flares occur, Plaintiff responded, "Lately, it's been -- it never really goes way.  It's gotten to a point where it's continuous, and I have really, really bad days, and then sometimes it'll be at least where I can, you know, sit up and do stuff in the house, but I still -- it doesn't get to the point where I can go out and do much of anything." (Tr. at 48-49.)  When asked what treatment she is receiving for fibromyalgia, Plaintiff responded, "[m]ostly just medication 'cause my insurance doesn't cover physical therapy or hydrotherapy.  I was sent to a pain management clinic for standard injections and that actually aggravated it; it didn't help at all. And I had multiple ones done to see if it would help, and it didn't." (Tr. at 50-51.)

Plaintiff testified that the only hobby she has is "taking care of my animals, playing with them.  I just have dogs and cats that, you know, they bring laughter and joy." (Tr. at 54.)  Plaintiff clarified that she has one dog and three cats that she rescued. (*Id.*)  Plaintiff indicated that she does not help with household chores because "any of the repetitive motion, it'll send my back into a spasm so bad I have to lay down." (Tr. at 56.)  When asked by the ALJ how she occupies her time, Plaintiff responded, "I watch TV, play with my animals.  Not a whole lot, anything I can do where I'm relaxed.  I like to draw and color and stuff like that, just to occupy my time." (*Id.*)  When asked, by counsel, why she isolates herself from people, Plaintiff responded, "Just, I don't know, I just get to where I don't want to be around anybody.  I think it's just 'cause I feel useless, you know, and just feel like people are looking down on me." (Tr. at 59.)

Plaintiff stated that she can lift "[n]o more than 10 pounds[,]" that she can sit "probably 20 minutes without -- well, probably five minutes without being able to move....maybe 15, 20, if I can

readjust my position[.]" (Tr. at 55.)  Plaintiff stated that she can only stand for "[a]bout five minutes before my back starts going." (*Id.*)

As to criminal convictions, Plaintiff responded that she did not have any felony convictions but that she "had a misdemeanor drug charge two years ago.  It was just for -- it was pled down to cocaine use" and she had an "alcohol-related accident in 2000." (Tr. at 55-56.)  She indicated that she was not on probation at the time of the hearing. (Tr. at 56.)

The ALJ asked the Vocational Expert ("VE") to assume a person with Plaintiff's background who is

> limited to a range of light work, work that involves lifting and carrying up to 10 pounds frequently, 20 pounds occasionally; standing and walking about six out of eight hours in a workday, the other time spent sitting.  She should have no exposure to heights or hazards, and I'm including in that no climbing of ladders, ropes, or scaffolding.  The other postural activities should be done on only an occasional basis; I'm including in that climbing ramps and stairs, stopping, kneeling, crawling, balancing, and crouching.  Also restrict her to only simple instructions, only routine tasks, and no public interaction.  And by no public interaction, I mean she should not -- it should not be a job that she's required to interact with the public as a requirement of the job, like a, you know, like a cashier, something like that, would obviously involve interaction with the public.  However, if she happened to be, say, cleaning a hotel room or something like that, and a member of the public or a customer walked by, that wouldn't be interaction, it would just kind of be incidental to the job.  So what I'm getting at there is the no public interaction required as part of the job duties.

(Tr. at 62.) The VE responded that such a person could not perform any past relevant work but could perform the light, unskilled jobs of food prep worker (5,900), dishwasher (4,200) and inspector (5,900) available in the lower peninsula of Michigan. (Tr. at 63.)  If a sit/stand option were added to the hypothetical, the VE indicated that the food prep and dishwasher jobs would be eliminated and the inspector jobs would be reduced to 1,600. (Tr. at 63-64.)  The VE further testified that there would be other light, unskilled jobs that such a person could perform, i.e., 4,500 assembler and 3,000 machine operator jobs. (Tr. at 64.)  The ALJ then asked the VE to change the exertional level to sedentary and change the sit/stand option to alternating positions every 30 minutes for five minutes at a time, and the VE responded that such a person could perform the 400 surveillance system monitor, 1,700 assembler, and 1,300 machine operator jobs available in the

region. (Tr. at 64-65.)  When asked by the ALJ, the VE testified that her testimony was consistent with the Dictionary of Occupational Titles ("DOT"). (Tr. at 65.)

### F.    Analysis and Conclusions

### 1.    Legal Standards

The ALJ determined that during the time Plaintiff qualified for benefits, she possessed the residual functional capacity to perform a limited range of light work. (Tr. at 22-31.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2.    Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 10.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that the ALJ failed to properly weigh and evaluate the treating and examining source opinions of Drs. Bielawski, Douglas, Tava, and Efobi, and erred by considering the absence of any restrictions placed on Plaintiff by any treating physician (Doc. 10 at 7-19,) erred in her assessment of the severity of Plaintiff's back pain (Doc. 10 at 19-24,) and erred by failing to properly assess Plaintiff's severe impairment of obesity. (Doc. 10 at 24-25.)

a.      **Medical Source Opinions**

i.      **Standards**

"Medical opinions are statements from physicians and psychologists or other 'acceptable medical sources' that reflect judgments about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." SSR 06-3p, 2006 WL 2329939, at *2 (2006).

The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. § 404.1527(c)(3). "Moreover, when the physician is a specialist with respect to the medical condition at issue, . . . her opinion is given more weight than that of a non-specialist." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011).

Since the Commissioner is responsible for determining whether a claimant meets the statutory definition of disability, the ALJ "will not give any special significance to the source of an opinion[, including treating sources], on issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section[,]" i.e., whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, residual functional capacity, and application of vocational factors. 20 C.F.R. § 404.1527(d)(3). A "[d]octor's notation in his notes of a claimed symptom or subjective complaint from the patient is not medical evidence; it is the 'opposite of objective medical evidence.' [Thus,] [a]n ALJ is not required to accept the statement as true or to accept as true a physician's opinion based on those assertions." *Masters v. Astrue*, 818 F. Supp. 2d 1054, 1067 (N.D. Ill. 2011). "Otherwise, the hearing would be a useless exercise." *Id.*

14

In addition, "a treating physician's assessment may be unreliable because of the bias he or she may bring to the disability evaluation," i.e., he or she "'may want to do a favor for a friend and client, and so the treating physician may too quickly find disability.'" *Id.* at 1073 (quoting *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001)). "Additionally, we have noted that the claimant's regular physician may not appreciate how her patient's case compares to other similar cases, and therefore that a consulting physician's opinion might have the advantages of both impartiality and expertise." *Dixon*, 270 F.3d at 1177. "[O]nce well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight . . . [but] 'is just one more piece of evidence for the administrative law judge to weigh . . . .'" *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) (quoting *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006)). Once the treating source is placed on the same level as other medical opinions, the treating source opinion should not be subjected to "greater scrutiny" than the non-treating sources, especially when there are more flagrant inconsistencies in the opinions of the non-treating sources. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 379-80 (6th Cir. 2013).

If the ALJ declines to give controlling weight to a treating source's opinion, then he must use the following factors to determine what weight the treating source opinion should be given: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson*, 378 F.3d at 544. These factors may be applied to all medical opinions, not just treating sources. SSR 06-3p, 2006 WL 2329939, at *3 (2006). However, because of the special status of treating source opinions, where the ALJ "failed to conduct the balancing of factors to determine what weight should be accorded these treating source opinions . . . , [t]his alone constitutes error." *Cole v. Comm'r of Soc. Sec.,* 652 F.3d 653, 660 (6th Cir. 2011) (quoting *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009)).

A physician qualifies as a treating source if the claimant sees the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation

required for [the] medical condition." 20 C.F.R. § 404.1502. "Acceptable medical sources" who can be considered treating sources include "licensed or certified psychologists." SSR 06-03p, 2006 WL 2329939, at *1-2 (2006). After treating sources, a "nontreating source, who physically examines the patient 'but does not have, or did not have an ongoing treatment relationship with' the patient, falls next along the continuum." *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012) (quoting *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007)). "'The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 F. App'x 279, 284 (6th Cir. 2003) (quoting *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)).

"Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5 (1996). *See also Rogers*, 486 F.3d at 242. "This requirement is not simply a formality; it is to safeguard the claimant's procedural rights." *Cole*, 2011 WL 2745792, at *4. "[A] failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

## ii.   Analysis

I note at the outset that Plaintiff cites to a Mental RFC assessment by Plaintiff's treating psychiatrist Dr. Donald Proux to undermine the findings of Dr. Efobi; however, that assessment was only admitted into evidence at the Appeals Council stage (Tr. at 483-86,) and was not a part of the record subject to judicial review for substantial evidence. *See Cline,* 96 F.3d at 148; *Cotton,* 2 F.3d at 696.

In addition, Plaintiff contends that the ALJ erred in her observation that "[g]iven the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by the treating doctor. Yet a review of the record in this case reveals no restrictions recommended by any treating doctor." (Tr. at 29.) I suggest that this argument lacks viability in light of Sixth Circuit decisions supporting an ALJ's decision based on the absence of restrictions from the plaintiff's treating physicians. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 596 (6th Cir. 2005)("'a lack of physical restrictions constitutes substantial evidence for a finding of non-disability'"), *quoting Maher v. Sec'y Health & Human Servs.*, 898 F.2d 1106, 1109 (6th Cir. 1989); *see also, Nunn v. Bowen*, 828 F.2d 1140, 1145 (6th Cir. 1987).

As to the remaining medical sources, Plaintiff first contends that the ALJ did not incorporate Dr. Sprague's conclusion that Plaintiff has "impaired concentration" into the RFC analysis. (Doc. 10 at 10; Tr. at 321.) However, the ALJ limited Plaintiff to "only simple instructions and only routine tasks[.]" (Tr. at 22.) I therefore suggest that the ALJ's RFC analysis incorporated Dr. Sprague's opinion as to Plaintiff's concentration issues.

Plaintiff next argues that had the ALJ "given great weight to the opinions of the state agency examiner Dr. Douglas and incorporated moderate impairments of concentration into the Plaintiff's RFC, a finding of disabled would have been directed." (Doc. 10 at 11.) The ALJ expressly considered Dr. Douglas's opinion (Tr. at 27-28,) and noted that Dr. Douglas "concluded that the claimant retained the mental capacity to perform simple, routine, 2-step tasks on a sustained basis[.]" This opinion is consistent with the ALJ's RFC limitation to "work activity involving only simple instructions and only routine tasks[.]" (Tr. at 22.) I therefore suggest that this argument lacks merit.

Plaintiff also contends that the ALJ erroneously failed to give any weight to the opinion of consultative examiner Dr. Tava. (Doc. 10 at 12.) The ALJ gave a detailed description of Dr. Tava's findings (Tr. at 27,) and determined to "give great weight to the opinions of the State agency psychological consultant and Dr. Efobi." Dr. Tava is the consultative psychological

consultant and his opinion was given great weight; thus, this argument lacks merit. In addition, Plaintiff's citation to Dr. Tava's "opinion" that Plaintiff is "'unable to work. Unable to function in the manner she had once been capable'" (Doc. 10 at 12; Tr. at 331), is taken out of context. This statement was not Dr. Tava's opinion but rather a recitation of Plaintiff's reported frustration. As such, it is not a medical opinion entitled to any weight. *Masters, supra.* Even if it were, it would be an opinion on the ultimate issue of whether a claimant is disabled which is reserved to the Commissioner and is not entitled to any weight. 20 C.F.R. § 404.1527(d)(3). I therefore suggest that Plaintiff's argument regarding Dr. Tava lacks factual and legal merit.

Plaintiff further argues that the ALJ "erred in giving great weight to the opinion of medical expert Dr. Efobi." (Doc. 10 at 12-15.) Plaintiff relies on the mental RFC assessment completed by Dr. Proux, Plaintiff's treating physician and argues that his assessment "demonstrates that Dr. Efobi's opinions drawn from a single evaluation in March of 2007 are not supportable." (Doc. 10 at 14; Tr. at 485-86.) However, pages 483-86 of the administrative record were admitted into evidence at the Appeals Council stage and are not a part of the record subject to judicial review for substantial evidence. *See Cline,* 96 F.3d at 148; *Cotton,* 2 F.3d at 696. I therefore suggest that this argument lacks merit.

Finally, Plaintiff argues that the medical interrogatories submitted to Dr. Efobi were in violation of HALLEX 1-2-542.[3] Plaintiff's counsel indicated that he had no objections to the evidence submitted nor was he "waiting on" any further evidence. (Tr. at 40-41.) I therefore suggest that any objection to the admission of this evidence was waived by counsel. *Lawson v. Sec'y of Health & Human Servs.*, 688 F.2d 436, 440-41 (6th Cir. 1982). I further note that although HALLEX provides procedural guidance, it is not binding on the courts. *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 397 (6th Cir. 2008); *Walters v. Comm'r of Soc. Sec.*, No. 11-15171, 2013 WL 1364719, at *15 (E.D. Mich. Mar. 12, 2013)(collecting cases). I therefore suggest that this argument is without merit.

----

[3]HALLEX stands for the Social Security Administration's Hearings, Appeals, and Litigation Law Manual available at http://www.ssa.gov/OP_Home/hallex.

18

### b.   Obesity

Plaintiff contends the ALJ erred by failing to properly assess Plaintiff's severe impairment of obesity. (Doc. 10 at 24-25.) I note that the ALJ expressly considered Plaintiff's obesity in fashioning the RFC and also expressly cited to S.S.R. 02-01p.  I therefore suggest that this issue is without merit.

### c.   Credibility Analysis

Plaintiff argues that the ALJ erred in her assessment of the severity of Plaintiff's symptoms of pain. (Doc. 10 at 19-24.)  When a disability determination that would be fully favorable to a claimant cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL 180789 at *4 (6th Cir. Jan. 19, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at *3 (6th Cir. Feb. 11, 1999) (unpublished). However, "[i]f an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky,* 35 F.3d at 1036.

The social security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such

severity that it can reasonably be expected to produce such disabling pain. *See id.*; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky*, 35 F.3d at 1038-39; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *Id.* Although a claimant's description of his physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," C.F.R. §§ 404.1528(a), 416.929(a), "[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded *solely* because they are not substantiated by objective medical evidence." SSR 96-7p, at *1 (emphasis added). Instead, the ALJ must consider the following factors:

(i)    [D]aily activities;

(ii)   The location, duration, frequency, and intensity of . . . pain;

(iii)  Precipitating and aggravating factors;

(iv)   The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

(v)    Treatment, other than medication, . . . received for relief of . . . pain;

(vi)   Any measures . . . used to relieve . . . pain.

*Felisky*, 35 F.3d at 1039-40; SSR 96-7p, at *3. Furthermore, the consistency of the evidence, including a claimant's subjective statements, is relevant in determining a claimant's credibility. 20 C.F.R. § 404.1527(c); SSR 96-7p, at *5.

In the instant case, the ALJ thoroughly considered each of the above factors. (Tr. at 22-31.)

"[U]nlike medical conditions that can be confirmed by objective testing, fibromyalgia

patients present no objectively alarming signs." *Rogers v.Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). "They demonstrate normal muscle strength and neurological reactions and can have a full range of motion[.]" *Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 434 (6th Cir. Jan. 24, 2013)(remanding for an award of benefits). The "causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective." *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996).

Here, the ALJ discounted Plaintiff's credibility because Plaintiff "has not generally received the type of medical treatment one would expect given her allegations of disability[,]" her "use of medication does not suggest the presence of an impairment that is more limiting than found in this decision[,]" "on good days she is able to" care for herself and do some household chores, and the fact that "it is difficult to attribute that degree of limitation of the claimant's condition, as opposed to other reasons, in view of the relatively weak medical evidence[.]"  (Tr. at 29-31.)  In *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 863-64 (6th Cir. 2011), the Sixth Circuit considered a statement of the reasons for discounting the plaintiff's credibility almost exactly identical to those recited by the ALJ in this case. The Sixth Circuit held that "the absence of objective medical evidence to substantiate the diagnosis of fibromyalgia or its severity is basically irrelevant, and more 'aggressive' treatment is not recommended for fibromyalgia patients." *Kalmbach,* 409 F. App'x at 864.

In addition, the Sixth Circuit held that evidence that a plaintiff can engage in some minimal daily activities on good days is not comparable to typical work activities, especially where the plaintiff alleges that her fibromyalgia suffers fatigue and pain "basically all the time" and that further activity "would cause a flare-up in her symptoms." *Id.* Similarly, in the instant case, Plaintiff testified that her pain has "gotten to a point where it's continuous, and I have really, really bad days, and then sometimes it'll be at least where I can, you know, sit up and do stuff in the house, but I still --it doesn't get to the point where I can go out and do much of anything." (Tr. at 48-49.)  Plaintiff also indicated that when she attempted to work or when she attempts to do

household chores, the work causes severe flare-ups where she cannot even get out of bed. (Tr. at 44-46, 56.)

In light of the current binding Sixth Circuit precedent, I am compelled to suggest that reversal is required.

### d.   Remand

Once it has been determined that the Commissioner's administrative decisions are not supported by substantial evidence, a district court faces a choice. It may either remand the case to the Commissioner for further proceedings or direct the Commissioner to award benefits. The court may reverse and direct an award of benefits if "all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits . . . where the proof of disability is overwhelming or where proof of disability is strong and evidence to the contrary is lacking." *Felisky,* 35 F.3d at 1041; *accord, Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). This comports with the principle that "where remand would be an idle and useless formality, courts are not required to convert judicial review of agency action into a ping-pong game." *Wilson v. Comm'r of Soc. Sec.*, 378 F3d 541, 547 (6th Cir. 2004) (citations omitted).

In this case, for the reasons set forth above, I conclude that there are no unresolved legal or factual issues.  The Court in *Kalmbach* reversed and remanded for an award of benefits.  I therefore suggest that since the same analysis applies here, *Kalmbach* requires reversal and remand for an award of benefits. Accordingly, I suggest that the ALJ's decision should be reversed and the case remanded for an award of benefits.


## III.   **REVIEW**

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590,

596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

s/ 𝕮harles 𝕰 𝕭inder

CHARLES E. BINDER
United States Magistrate Judge

Dated: August 26, 2013

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: August 26, 2013                    By    s/Patricia T. Morris
                                                 Law Clerk to Magistrate Judge Binder